IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AL HUTTON and DOUG WHORTON,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF FAIRBANKS,<br><br>    Defendant. | Case No. 4:08-cv-0029-RRB<br><br>**ORDER GRANTING DEFENDANT'S<br>RENEWED MOTION FOR JUDGMENT<br>AS A MATTER OF LAW AS TO<br>PLAINTIFFS' CLAIMS AT DOCKET 341** |

Before the Court, at **Docket 341**, is Defendant City of Fairbanks (City) with a Renewed Motion for Judgment as a Matter of Law in which the City asks the Court to dismiss the claims of Plaintiff Al Hutton (Hutton) and Plaintiff Doug Whorton (Whorton), as a matter of law.

I.  BACKGROUND

This matter was the subject of a jury trial that took place in Fairbanks, Alaska, between March 28, 2013, and April 17, 2013. Numerous witnesses testified and a large amount of evidence was presented. The jury was unable to reach a verdict after roughly six days of deliberation and, in fact, never got past question 1 of the Special Verdict as to Hutton after five days of deliberation, and never got past question 7 of the Special Verdict as to Whorton after roughly one day of deliberations. In other words, the jury never got

beyond the first question posed as to each Plaintiff.[1] For the jury to have awarded a favorable verdict for Hutton, it would have still had to have found in his favor as to questions 2, 3, 4, and 5, which questions they never addressed. And for the jury to have found in favor of Whorton, it would have still had to have found in his favor as to questions 8, 9, and 10, which questions they did not reach. Plaintiffs faced significant hurdles as to the remaining questions in light of the burden of proof and the evidence presented at trial. So regardless of what the newspaper might report, the jury was far from any final resolution of the case when it became deadlocked. The Court, however, after hearing all of the relevant evidence, as well as studying the post-trial pleadings of the parties and relevant case law, is in a position to resolve the disputes presented.

## II. STANDARD OF REVIEW AND CONTROLLING LAW

Federal Civil Rule 50(a)(1) authorizes the court to grant a motion for judgment as a matter of law "if a party has been fully heard on an issue during jury trial and the court finds that a reasonable jury should not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Rule 50(b) provides that after the jury has been dismissed, the movant may renew the motion, which is the case here, and seek judgment as a matter of law. The sufficiency of the evidence is an issue of law to be determined by the court.[2] When

---

[1] See Jury note 20 where the jury asks if it can move to question number 7 after five days of deliberation and consider the claims brought by Whorton and note 24 where the jury notifies the Court that it is unable to reach a unanimous verdict, Docket 331.

[2] *Lange v. Penn Mut. Life Ins. Co.*, 843 F2d.1175, 1181 (9th Cir. 1988).

Case 4:08-cv-00029-RRB   Document 353   Filed 08/19/13   Page 2 of 15

considering a motion for directed verdict, the court must view the evidence "in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party."[3]

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern."[4] However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communication from employer discipline."[5]

In order for either Plaintiff to prevail on his First Amendment claim, he must establish not only that his statements led to some form of discipline, but that, at the time in question, he was acting as a private as opposed to a public citizen **and** was addressing matters of public as opposed to private concern. Whether Plaintiffs spoke as a public employee or a private citizen is a mixed question of fact and law.[6] The public concern inquiry is purely a question of law.[7]

---

[3]  *Torres v. City of Los Angles*, 548 F.3d 1197,1205-06 (9th Cir. 2008).

[4]  *Huppert v. City of Pittsburg*, 574 F.3d 696, 702 ( 9th Cir. 2009).

[5]  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[6]  *Posey v. Lake Pend Oreille School Dist. No 84*, 546 F3d 1121, 1129 (9th Cir. 2008), *Antoine v. North Central Counties Consortium*, 605 F. 3d 740, 749 (9th Cir. 2010).

[7]  *Eng v. Cooley*, 552 F. 3d 1062, 1070 (9th Cir. 2009).

### III. DISCUSSION: HUTTON

The City contends that Plaintiff Hutton was acting as a City employee, not a private citizen, when he met with Mayor Strle in January of 2008, and that he met with Mayor Strle to discuss his own personal workplace concerns - not matters of public concern. He therefore is not entitled to First Amendment protection. The City further contends that Hutton failed to establish any causal connection between his termination and his conversation with Mayor Strle.

Hutton opposes at Docket 346 and contends that he was acting as a private citizen when he went to talk to the Mayor and that it was this meeting that formed the basis for his subsequent termination.

The City replies at Docket 352 and argues that Hutton failed to make out a prima facie First Amendment claim for retaliation at trial and that Hutton's meeting with the Mayor was, in fact, not in his capacity as a private citizen but in furtherance of his own employment grievances. Moreover, the City argues that the evidence at trial clearly established that the reason Hutton was terminated involved credibility issues relating to his accusation against Lt. Tippett long after Hutton met with the Mayor.

It is abundantly clear to the Court, based on the extensive evidence presented at trial and a careful review of relevant testimony, that Hutton was acting as a public employee and in his capacity as a police officer when he approached the Mayor, during work hours, on or about January 29, 2008.

When Hutton met with the Mayor in January of 2008, he was doing so **primarily** to discuss pay issues, private grievances, and matters of personal concern. Hutton was upset and angry at the administration because he did not get a 5% pay differential that he felt that he was entitled to after he voluntarily transferred from patrol to investigator. He felt that he was entitled to such a raise under the terms of his union contract, but both the union and the police administration disagreed with him on this point. Moreover, Hutton alleged that he had been threatened by his supervisor that if he filed a grievance regarding the pay differential issue he would be put back in patrol. Hutton was also upset because his friend and co-Plaintiff, Doug Whorton, did not get the lieutenant investigator position that Whorton had sought. These three complaints, and his general dislike for the police administration, predominated Hutton's thinking when he met with the Mayor on January 29, 2008, and were the source of great anger to him. But these were all matters that were personal to Hutton and that the average citizen would not likely be privy to or concerned with.

The evidence at trial established that, although the administration denied Hutton's request for the 5% pay differential, no threats were made and a return to patrol duty was merely an option Hutton had if he so desired. The lack of any such threat was made clear in the trial testimony of former Chief Daniel Hoffman, Deputy Chief Brad Johnson, and Lt. Dan Welborn, the supervisor who allegedly threatened Hutton. Lt. Welborn was an especially credible witness on this point and had no reason to make such a threat and no history of dealing in this manner with Hutton or anyone else. In fact, Lt. Welborn

encouraged Hutton to file a grievance if he so desired in order to resolve the issue once and for all. Grievances were not unusual within the police union and were not discouraged by the police administration, all of whom were, or had been, members of the union. Hutton's testimony that he was threatened was not credible and his reaction to the discussion with Lt. Welborn was overblown and almost irrational and became worse during the following days. Those that witnessed Hutton's conduct in the week that followed his January 29, 2008, meeting with the Mayor, including Amber Courtney, Patrick Cole, Dan Welborn, and others, were concerned that he had snapped and presented a safety issue for the department. They were legitimately concerned about Hutton's mental health. Hutton perceived personal mistreatment that did not exist and he wanted the Mayor to intervene immediately. He had been unable to obtain relief from his supervisor and from the union. He therefore visited the newly elected Mayor and presented his complaints to her.

Hutton has **not** established, by a preponderance of the evidence, that he was acting as a private citizen as opposed to a police officer on January 29, 2008, when he met with Mayor Strle, and no reasonable juror could make such a finding after considering all of the evidence presented.

The Court further concludes, as a matter of law, that the primary subjects of discussion between Hutton and Mayor Strle on January 29, 2008, were matters of private rather than public concern. Other police department related subjects may have been discussed incidently, including radios, vehicles, training issues, and nepotism, but they were

insignificant in comparison to the personal matters that dominated the discussion and that brought Hutton to Mayor Strle's office that day. No reasonable person, after considering all of the evidence, could conclude otherwise. Therefore the Court must **GRANT** the City's motion for dismissal. Hutton was acting as a police officer and was discussing matters primarily of a personal and private nature when he met with Mayor Strle on January 29, 2008. His conduct on this occasion therefore lacked First Amendment protection.

Aside from the First Amendment issues discussed above, there is additional reason to dismiss Hutton's claims. The jury in this matter was not able to reach a conclusion with regard to the causation issue. The questions received from the jurors indicated that the jury was having difficulty determinating what Mayor Strle was thinking at the time of Hutton's termination; i.e. what role did the meeting play in the decision to terminate? Sole, primary, or partial? And later the jury asked for further clarification on the meaning of "substantial motivating factor." Several jurors inappropriately engaged in their own internet research regarding these words but ultimately no agreement was reached. After again reviewing the testimony of the key witnesses, including Mayor Strle and Officer Tippett, the Court concludes that the reason Mayor Strle terminated Hutton was because of her belief that Hutton had been dishonest regarding a dispute that arose between Hutton and Lt. Tippett, and because of Mayor Strle's legitimate concern that dishonesty of a police officer was a very serious matter that required termination. An independent arbitrator has already ruled

that the City had just cause to terminate Hutton for this reason.[8] And, significantly, Mayor Strle only terminated Hutton after seeking the advise of the newly appointed police chief, Laren Zager, who reviewed the entire matter before making his recommendation. Mayor Strle denied that Hutton was terminated because of the meeting with her that occurred eighteen months earlier, and Chief Zager made no mention of this meeting in his recommendation that Hutton be terminated. The Court finds Mayor Strle's testimony to have been credible. She fired Hutton because of concerns regarding his credibility - not because of a meeting that had occurred 18 months earlier. The issue is not whether Hutton lied regarding Tippett, but whether or not Mayor Strle reasonably believed he lied which, in this case, she clearly did. Hutton has failed to establish that he would not have been fired but-for his meeting with Mayor Strle.

The Court has re-listened to much of the trial testimony and, based thereon, further concludes that even if there was a First Amendment violation, which the Court concludes there was not, and even if the Tippett incident had not occurred, the City would have been justified in terminating Hutton. He surreptitiously recorded a conversation with Lt. Welborn, as well as union representatives, and attempted to do so with Joe Evans, the attorney hired to investigate his complaints. Hutton's anger and irrational conduct was alarming to those around him and was disproportional to his complaints. His abrasive and aggressive actions were disruptive within the police department and raised legitimate safety concerns. At the

---

[8] Docket 130-5.

time of Hutton's termination, it was unhealthy for all involved that he remain a city police officer.

The evidence presented at trial was overwhelming that the City police department was operating well under Chief Hoffman and that the general atmosphere within the department was very good. Lt. Welborn, who had served under eight police chiefs, testified that Chief Hoffman was by far the best chief he had ever served under. Officer Tippett testified that during the time in question, the City police department was operating better than it had in twenty-five years. The current Police Chief, Chief Laren Zager, who replaced Chief Hoffman upon Hoffman's retirement, testified telephonically at trial that upon assuming control of the police department from Chief Hoffman he found very little to fix. He noted that the department was being run very well, was a very impressive operation, and was staffed with a remarkable caliber of personnel. Other than Plaintiffs, no witness testified of a hostile work environment or had serious criticism of the police administration during the time period in question.

In dealing with Hutton, the City went to great lengths to address his various complaints. When Hutton asked to move from patrol to investigator his request was granted. When he sought additional funds for a uniform allotment as an investigator it was granted. When he sought administrative leave it was approved. When he began to display irrational conduct, as well as extreme anger and abrasiveness, he was provided mental health treatment. It was not until serious issues arose as to Hutton's honesty that the Mayor

concluded that termination was required. Under the circumstances, the Court cannot find this to be unreasonable or illegal. Therefore, for the reasons set forth above, the Court hereby **GRANTS** the City's Motion for Judgment as a Matter of Law as to Al Hutton.

## IV. DISCUSSION: WHORTON

The City contends, at Docket 341, that Plaintiff Doug Whorton was acting as a City employee, not a private citizen, when he met with Mayor Strle on January 31, 2008, at the Cookie Jar Restaurant, and that he met with Mayor Strle in her capacity as his supervisor to discuss his own private concerns - not matters of public interest. Therefore, the City argues Whorton lacked First Amendment protection. Moreover, the City argues that even if Whorton did engage in protected speech, the City was justified in demoting him. Whorton opposes at Docket 346 and contends that he was compelled to meet with the Mayor and was speaking to her as a private citizen, not as a police officer, about matters of pubic concern. The City replies at Docket 352 and argues that the City is entitled to judgment as a matter of law as to Whorton because the evidence shows that Whorton was acting as a police officer when he met with the Mayor and the primary subject of discussion was internal workplace issues. Moreover, the City argues that even if the speech involved was protected, Whorton's conduct was seriously disruptive to the police department and justified his demotion.

The evidence at trial established that after his January 29, 2008, meeting with Mayor Strle, Hutton provided Mayor Strle with Doug Whorton's telephone number and urged her

Case 4:08-cv-00029-RRB   Document 353   Filed 08/19/13   Page 10 of 15

to call Doug Whorton regarding complaints he had with the police administration. When the Mayor did not immediately call Whorton, Hutton was back in the Mayor's office the next day to see why not. According to Hutton, who was highly agitated at the time, Whorton had gone without sleep awaiting the Mayor's call. Ultimately Mayor Strle called Whorton and arranged to meet with him on January 31, 2008, to discuss his concerns. Whorton's suggestion that he was compelled to meet with the Mayor is not credible. Mayor Strle was simply trying to understand what it was that seemed to so greatly upset Hutton and Whorton. And Whorton had nearly the identical complaints for the Mayor that Hutton had previously expressed. The meeting with Whorton took place at 8:00 a.m at the Cookie Jar Restaurant and appeared to the Mayor to be almost clandestine in nature. The evidence established that, like Hutton, Whorton was very upset with the police administration and wanted to see drastic changes made, including the removal of the police chief and the deputy police chief. Whorton, at the time, was a member of the police command staff and was contacting the Mayor "outside of the chain of command." Whorton clearly understood that the Mayor was his superior and that he was speaking to her about matters that concerned the internal operations of the police department. The list of topics Whorton made for discussion[9] illustrate his concerns, which included hostile work environment, pay grievance, assignments, alleged threats, lack of training, lack of evaluation, OSHA, radios, and PPE. Most, if not all, of these items involve internal workplace issues. Whorton was not

---

[9] Trial Exhibit 80.

discussing things that the average citizen would have been aware of or impacted by. And most of his complaints would more appropriately have been addressed by the chief of police or through the union grievance procedure. Nevertheless, Whorton proceeded to lay out all of his grievances to the newly elected Mayor.

Mayor Strle was naturally concerned by the laundry list of complaints that Whorton presented to her. The picture of the police department that Whorton painted was far different than the Mayor understood it to be. Ultimately Mayor Strle elected to retain an outside attorney to independently investigate the complaints of both Hutton and Whorton. This investigation, conducted by attorney Joe Evans, found that the complaints presented were without merit. The evidence presented at trial also established that Whorton's complaints were unfounded or over-blown.

Whorton has not established, by a preponderance of the evidence, that he was acting as a private citizen at the time he met with Mayor Strle at the Cookie Jar Restaurant and no reasonable juror could make such a finding after considering all of the relevant evidence.

The Court further concludes, as a matter of law, that the primary subjects of discussion between Whorton and Mayor Strle at the January 31, 2008, meeting were matters of private rather than public concern. Whorton had personal issues with the police department that he was unable to resolve to his satisfaction through his chain of command or through the union so he stepped out of his chain of command to bring his complaints

directly to a newly elected Mayor in hopes of somehow obtaining his own personal satisfaction. The evidence presented at trial was clear that the one thing that seriously disturbed Whorton and was the source of great personal angst was the fact that he did not receive the lieutenant investigator position that he desired. Yet the evidence was also clear that Whorton was not entitled to this position and lacked the qualifications of the person who ultimately obtained the appointment. No reasonable person, after considering all of the relevant evidence, could find otherwise. Therefore the Court must **GRANT** the City's motion for dismissal. Whorton was acting as a police officer and was discussing matters primarily of personal and private concern when he met with Mayor Strle on January 31, 2008, at the Cookie Jar Restaurant. His conduct at that time therefore lacked First Amendment protection.

The Court further concludes that even if Whorton was entitled to First Amendment protections, which he was not, the City's decision to demote him from lieutenant to sergeant was justified. The unrebutted testimony presented at trial established that Whorton's animosity towards the police chief and the deputy police chief, which appears to have been largely without merit, prevented him from functioning productively within the command staff of the department. Furthermore, the disruption his conduct created within the department justified his demotion.

## V. OVERVIEW

This is an unfortunate case that has cost all involved great expense and heartache. The evidence presented at trial though was clear. While no police department is perfect, the Fairbanks Police Department was functioning very well at the time the events that gave rise to this dispute arose. By all accounts, Chief Hoffman had the respect and support of his staff and of the community in general and Mayor Strle took her duties and responsibilities very seriously. Other than Plaintiffs, there was no evidence presented to the contrary. But two police officers were not happy. They were not bad people or bad police officers but they fed off each other's fears and misconceptions. Hutton believed that he should receive a 5% pay differential that everyone else who considered that matter, including the police union, did not believe he was entitled to. Whorton believed that he, and not Lt. Welborn, should have been given the investigator position within the command staff of the police department. Whorton's superiors did not agree with him about this. Both Hutton and Whorton blamed their disappointments on the chief and deputy chief of the police department and wanted them gone. And the evidence suggests that they worked together toward this end, hoping that what they could not obtain within the accepted chain of command and the union grievance process they could somehow obtain through a newly elected Mayor. The fact that they were unsuccessful led to the current litigation which the Court, after again studying all the relevant evidence, finds to be completely without merit.

ORDER GRANTING MOTION AT 341 - 14
4:08-CV-0029-RRB

## VI. JUDGMENT

For all the reasons set forth above, as well as for the reasons expressed by Defendant at Dockets 341 and 352, Defendant's Renewed Motion for Judgment as a Matter of Law as to Plaintiffs' Claims at **Docket 341 is** hereby **GRANTED.**

Plaintiffs' Motion of New Trial at **Docket 342** is hereby **DENIED** and this matter is **DISMISSED** in its entirety.

**IT IS SO ORDERED** this 19th day of August, 2013.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE